972 F.2d 343
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Rosa RODRIQUEZ-MORALES, a/k/a Rosa Morales-Rodriquez, a/k/a
Debbie White, Defendant-Appellant.
 No. 91-5824.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: June 30, 1992
Decided: July 28, 1992
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Robert D. Potter, Graham C. Mullen, District Judges. (CR-90-95-MU)
 Michael S. Scofield, Law Offices of Michael S. Scofield, Charlotte, North Carolina, for Appellant.
 Thomas J. Ashcraft, United States Attorney, Charlotte, North Carolina, for Appellee.
 W.D.N.C.
 Affirmed.
 Before WIDENER, Circuit Judge, BUTZNER, Senior Circuit Judge, and MERHIGE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Following her indictment for possession with intent to distribute more than fifty grams of crack cocaine in violation of 21 U.S.C. § 841(a) (1988), and using and carrying a firearm during a drug trafficking crime in violation of 18 U.S.C.A. § 924(c)(1) (West 1985 and Supp. 1992), Rosa Rodriquez-Morales moved to suppress the cocaine and gun which had been seized at the time of her arrest. A magistrate judge recommended granting the suppression motion, but the district court denied the motion. Rodriquez-Morales timely appealed, contending that the contraband should be suppressed because it was illegally seized. We find no merit to Rodriquez-Morales's claims; consequently, we affirm the district court's order.
 
 
 2
 On June 1, 1990, Charlotte, North Carolina, police officers stopped a car in which Rodriquez-Morales was a passenger after the car left a known crack house. The police had an arrest warrant for the owner of the car. Knowing that weapons had been seen inside the crack house and that a person arrested earlier that day after leaving the crack house had been armed, the police approached the stopped car with their guns drawn and ordered the three individuals inside the car to come out.
 
 
 3
 After Rodriquez-Morales stepped out of the front seat, Officer Hazelton saw a small bulge in her pocket which he believed to be drugs. He reached into her pocket, withdrew a plastic bag containing five grams of cocaine, and arrested her.
 
 
 4
 Hazelton then addressed Shawn Torres, the back seat passenger. Torres did not respond when Hazelton told him he was going to look into the car. Glancing inside, Hazelton spotted a partially concealed handgun under some papers and arrested Torres for carrying a concealed weapon. Hazelton then searched the car's passenger compartment. On the front seat, he saw two purses. The one on the passenger side was open and a large plastic trash bag was visible. Hazelton opened the trash bag and found 275 grams of crack cocaine inside. Underneath the trash bag, Hazelton found a loaded nine millimeter pistol inside the purse and two identification cards belonging to Rodriquez-Morales.
 
 
 5
 Rodriquez-Morales was charged with possession with intent to distribute in excess of fifty grams of cocaine base and using and carrying a firearm in relation to a drug trafficking crime. She filed a motion to suppress the gun and cocaine seized from her purse and the cocaine seized from her pocket. After a hearing, a magistrate judge issued a Memorandum and Recommendation suggesting that the motion be granted. The Government objected to the magistrate judge's Memorandum and Recommendation. The district court entered an order accepting in part and reversing in part the magistrate judge's Memorandum and Recommendation and denying the motion to suppress. Pursuant to a plea agreement, Rodriquez-Morales pled guilty to both counts of the indictment, reserving the right to appeal the district court's denial of her suppression motion. After the district court sentenced her to 121 months in prison on Count 1 and to sixty consecutive months in prison on Count 2, Rodriquez-Morales timely appealed.
 
 
 6
 On appeal, Rodriquez-Morales contends that the drugs and weapon found at the scene of her arrest were seized improperly and therefore should have been suppressed from evidence. This Court reviews de novo a district court's conclusions of law; findings of fact will not be overturned unless they are clearly erroneous. United States v. McCraw, 920 F.2d 224, 227 (4th Cir. 1990).
 
 
 7
 I.Inevitable Discovery of the Drugs and Weapon
 
 
 8
 Rodriquez-Morales contends that the search of her pocket and seizure of cocaine from that pocket is identical to the illegal search and seizure in Sibron v. New York, 392 U.S. 40 (1968), and therefore the cocaine must be suppressed from evidence. In Sibron, a police officer saw the defendant speaking with several known drug addicts. The officer approached the defendant and said "You know what I am after." As the defendant reached into his pocket, the policeman also reached into the same pocket and pulled out several glassine envelopes of heroin. Id. at 45. The Supreme Court held that the search violated the Fourth Amendment protection against unreasonable searches. Id. at 65-66. Citing Terry v. Ohio, 392 U.S. 1 (1968), the Court noted that, although a limited patting of a suspect's outer clothing in search of weapons is justified even absent probable cause to arrest, the police officer was looking for narcotics-not weapons-and that reaching into a pocket exceeds a permissible search even for weapons. Id. at 65.
 
 
 9
 Under the Sibron analysis, the search in this case violated the Fourth Amendment. At the time of the search, Hazelton did not have probable cause to arrest Rodriquez-Morales. Hazelton believed that the lump he saw in Rodriquez-Morales's pocket was cocaine-not a weapon. Even if he had thought it was a weapon, thrusting his hand into her pocket exceeded the limited pat-down of outer clothing approved in Terry.
 
 
 10
 The fact that the cocaine from Rodriquez-Morales's pocket is inadmissible under Sibron does not mean, however, that it should have been suppressed. As the district court correctly found, the seizure is admissible under an exception to the exclusionary rule. The cocaine and gun found in Rodriquez-Morales's purse also is admissible under the same exception.
 
 
 11
 The inevitable discovery exception to the exclusionary rule permits the admission of evidence originally obtained through police misconduct if the preponderance of evidence indicates that the evidence inevitably would have been discovered by lawful means. Nix v. Williams, 467 U.S. 431, 443-45 and n.4 (1984); United States v. Whitehorn, 813 F.2d 646, 649 (4th Cir. 1987), cert. denied, 487 U.S. 1234 (1988). If Officer Hazelton had not unlawfully reached into Rodriquez-Morales's pocket and seized the cocaine therein, the cocaine would have been discovered ultimately through lawful means.
 
 
 12
 In Michigan v. Long, 463 U.S. 1032 (1983), the Court extended the rule established in Terry and held that when police officers stop a car, they may search the areas of the passenger compartment where a weapon could be hidden if they have a reasonable belief "that the suspect is dangerous and the suspect may gain immediate control of the weapons." Id. at 1049. The police lawfully may seize any other contraband discovered while conducting this type of a Terry search. Id. at 1050.
 
 
 13
 When Hazelton stopped the car in which Rodriquez-Morales was a passenger, it was reasonable to believe that it contained weapons. Firearms had been observed in the stash house. The individual arrested earlier in the day after leaving the stash house also had been armed. Furthermore, guns are commonly considered tools of the narcotics trade. Thus, Hazelton lawfully could conduct a limited search of the passenger compartment of the car to search for weapons. In the process of such a search, Hazelton would have spotted the pocketbooks on the front seat and lawfully would have searched them, discovering a gun and cocaine in Rodriquez-Morales's purse. This discovery would have given Hazelton probable cause to arrest Rodriquez-Morales. Beck v. Ohio, 379 U.S. 89, 91 (1964). After lawfully arresting her, Hazelton could have conducted a search of Rodriquez-Morales's person and the area within her immediate control and would have discovered the cocaine in her pocket. Chimel v. California, 395 U.S. 752, 763 (1969). Accordingly, the district court properly denied Rodriquez-Morales's motion to suppress the cocaine and weapon seized from her pocket and her purse.
 
 
 14
 II.Independent Discovery of the Drugs and Weapon
 
 
 15
 The cocaine and gun seized from Rodriquez-Morales's pocketbook also are admissible under another exception to the exclusionary rule. The independent source doctrine permits the introduction of evidence initially discovered during, or as a result of, illegal government conduct, but later obtained independently, from lawful activities untainted by the initial illegality. Murray v. United States, 487 U.S. 533 (1988). Even if the unlawful seizure of cocaine from Rodriquez-Morales's pocket tainted the discovery of the contraband in her purse, the gun and drugs were obtained legally through the lawful search of the car for weapons.
 
 
 16
 Under exceptions to the exclusionary rule, the district court properly refused to suppress the drugs and weapon found in Rodriquez-Morales's purse and on her person. Accordingly, we affirm the district court's order denying Rodriquez-Morales's motion to suppress. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED